IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ISAAC WILEY                                                    PLAINTIFF

        v.                    Civil No. 08-03056

WAYNE HICKS, ET AL.                                          DEFENDANTS

PULASKI BANK AND TRUST CO.
AND FEDERAL DEPOSIT INSURANCE CORP.,
AS RECEIVER FOR ANB FINANCIAL, N.A.                         GARNISHEES

BENTLEY INVESTMENTS OF NEVADA, L.L.C.                        INTERVENER

<u>AMENDED AND SUBSTITUTED ORDER</u>

        NOW on this the 28th day of September 2010, this matter
comes on for consideration.  This Order amends and substitutes
the Court's prior Order entered on September 24, 2010 (document
#53) and is entered pursuant to Rule 60 of the Federal Rules of
Civil Procedure.[1]

        This case now comes on for consideration the following
motions:

---

        [1] The Court is amending its prior Order *sua sponte* to
address and correct the Court's statements in its previous
opinion that Pulaski Bank & Trust had interpled funds into the
registry of the Court.  As set forth *infra,* Pulaski Bank withdrew
its interpleader action and is holding said funds pending the
Court's ruling on the pending motions.

* Intervener Bentley Investments of Nevada's **Motion for Summary Judgment** (document #21);

* Plaintiff Isaac Wiley's **Motion for Summary Judgment** (document #23);

* Garnishee Federal Deposit Insurance Corporation's **Motion to Interplead Receiver's Certificate (in Lieu of Cash)** (document #27);

* Intervener Bentley Investments of Nevada's **Supplemental Motion for Summary Judgment** (document #30); and

* Plaintiff Isaac Wiley's **Motion to Strike the Supplemental Motion for Summary Judgment of Bentley Investments** (document #38).

The Court, having reviewed the pleadings of the parties, and all other matters of relevance before it, and being well and sufficiently advised, finds and orders as follows with respect to the foregoing motions:

1. MY ICIS, Inc. ("MYICIS") was an online money service business that Wayne Hicks owned and operated for the purpose of helping people avoid paying federal income taxes. During the relevant time period, Hicks MYICIS maintained a deposit account in the name of MYICIS at now-defunct ANB Financial, N.A.("ANB"). Plaintiff gave Hicks over $500,000 to deposit into the MYICIS

account at ANB.  Despite his repeated demands, Plaintiff was
unable to get his money back from Hicks and/or MYICIS.

2.  This case involves the competing claims of Plaintiff and
Intervener Bentley Investments of Nevada, LLC ("Bentley") to the
remaining funds in the MYICIS account that was once held at ANB.

3.  The Court notes that it has presided over four other
matters involving MYICIS and Hicks -- *JPMorgan Chase Bank, N.A.
v. My MYICIS, Inc., et al*, Case No. 07-cv-3031[2]; *N.R. Smith v.
MYICIS, INC.,* Case No. 08-cv-3055[3]; *United States v. Hicks*, Case
No. 08-cr-50086[4]; and *United States v. Hicks*, Case No. 10-cv-
3026[5].

---

[2]On July 28, 2008, the Court entered a default judgment
against MYICIS, Hicks and another separate defendant and, after a
hearing on the matter, awarded damages against all defendants in
the amount of $176,940.72.

[3]*Smith v. MYICIS* is currently stayed.  N.R. Smith sought
leave to intervene in this case and, on September 2, 2009, the
Court granted N.R. Smith permission to intervene.  However, N.R.
Smith never filed a complaint in intervention and, thus, N.R.
Smith is not a party in this cause.

[4]On February 12, 2009, this Court sentenced Mr. Hicks to
five years in prison, a $25,000 fine and $7,000,000 in
restitution.

[5]On April 9, 2010, the parties entering into a Stipulated
Judgment of Permanent Injunction against MYICIS in which this
Court permanently enjoined MYICIS from, *inter alia,* engaging in
any activity that is designed to assist taxpayers in evading
federal income tax liabilities.

4.    The parties have agreed that this case can be disposed of by summary judgment and, thus, no trial date has been set. Plaintiff and Bentley have filed motions for summary judgment that are ripe for the Court's review.

5.    Summary judgment should be granted when the record, viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See Walsh v. United States*, 31 F.3d 696 (8th Cir. 1994).  Summary judgment is not appropriate unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. *See Hardin v. Hussmann Corp.*, 45 F.3d 262 (8th Cir. 1995).  The burden is on the moving party to demonstrate the non-existence of a genuine factual dispute; however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the existence of a genuine dispute. *See City of Mt. Pleasant, Iowa v. Associated Electric Co-op*, 838 F.2d 268 (8th Cir. 1988).

4

6.   The following material facts are undisputed:

*   On September 20, 2006, Bentley agreed to loan up to $2,000,000 to Defendant Wayne Hicks d/b/a MYICIS.  The purpose of said funds was to allow Hicks to establish a fund for the online money service business that he intended to operate.

*   In the September 20, 2006 loan agreement, Bentley and Hicks agreed to the execution of additional documents to secure and perfect Bentley's security interest in the assets of Hicks.

*   To that end, an Account Pledge, Assignment, and Control Agreement (the "Control Agreement") was executed by Hicks, his wife Lori Hicks, and Bentley.

*   Through the Control Agreement, Bentley was granted a security interest in Hick's ANB bank account No. 50024280 (hereafter referred to as the "Account").

*   On September 27, 2006, Bentley loaned Hicks $1,000,000 and wired the same to ANB to be deposited in the Account.

*   On April 9, 2007, Plaintiff obtained a judgment in the total amount of $590,650.88 against Hicks, MYICIS, and the other separate defendants.  On April 10, 2007, Plaintiff filed a Petition for Registration of Foreign Judgment in the Circuit Court for Carroll County, Arkansas, and, thereafter, registered the Missouri judgment in Arkansas.

*   On May 31, 2007, Plaintiff filed a Writ of Garnishment in the Circuit Court of Carroll County, Arkansas. Thereafter, on June 1, 2007, Plaintiff served a Writ of Garnishment on ANB.

*   On June 6, 2007, ANB filed its answer to Plaintiff's Writ of Garnishment, stating that it would not pay the writ for the following reason:

According to ANB, the funds in the Account were subject to a September 26, 2006 contractual agreement, referred to as the "Reserve Fund and Security Agreement" (the "Security Agreement"), between the deposit account holders -- Wayne and Lori Hicks, d/b/a MYICIS -- and ANB.

ANB answered that, pursuant to the Security Agreement, the Account was to maintain a minimum balance of $1,000,000 and that this minimum balance was to be used by ANB to pay any "return items, debits, or other charges" placed against the Account.

ANB further answered that it did not possess sufficient funds to satisfy Plaintiff's Writ -- as the Account's balance was less than the $1,000,000 reserve fund. Specifically, at the time the writ was served, the Account had a balance of $635,963.01.[6]

---

[6] At a hearing held in state court on August 7, 2007, counsel for ANB stated that, at some point, at Mr. Hicks'

6

* On May 9, 2008, ANB was closed by the Office of Comptroller of Currency and the FDIC was named as Receiver of the failed institution. Pursuant to the receivership, the FDIC exercised control over the assets and liabilities of ANB -- including the Account.

* Although ANB initially claimed an interest in the Account by virtue of the Security Agreement, the FDIC, as Receiver for ANB, no longer claims any interest in the Account. Thus, the only two parties that claim an interest in the Account are Plaintiff and Bentley.

* As a result of a transaction described as an "FDIC Pass Withhold," the FDIC procured $498,712.78 from the Account. The remaining $100,000 in the Account was transferred to Pulaski Bank -- the bank appointed to hold the insured portions of ANB's various deposit accounts.

* Shortly thereafter, Plaintiff served Pulaski Bank with a Writ of Garnishment seeking to garnish the $100,000 of the insured portion of the MYICIS account that had been transferred to Pulaski Bank. Bentley moved to quash and dismiss the writ on

_____

request, ANB agreed to allow Hicks to withdraw $350,000 from the Account and thereby lowered the reserve amount to $650,000. *See Hearing Transcript* at p. 5 (document #23-12). Counsel for ANB further stated that, from that amount, it paid some liability claims.

7

the basis that Bentley claimed a superior interest in the account.

    *    On September 25, 2008, the FDIC, as Receiver for ANB, removed the case to this Court. In accordance with the state court's previous order, this case was stayed on October 7, 2008, pending Plaintiff's exhaustion of his administrative remedies as required by the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA). On March 13, 2009, the case was reopened on Plaintiff's motion in which he advised the Court that he had exhausted his administrative remedies.

    *    On July 30, 2009, the Court granted the motion of Pulaski Bank to interplead $100,000 -- the insured portion of the MYICIS account -- into the registry of the court. Pulaski Bank never deposited said funds into the registry of the Court, however, and instead, filed a Motion to Withdraw Motion to Interplead Funds and Request to Vacate July 30, 2009 Order (document #28). The Court granted that motion on September 2, 2009 (document #42) and Pulaski Bank is holding said funds pending the Court's ruling on the pending motions.

    *    On August 18, 2009, after the parties filed their motions for summary judgment, the FDIC filed a Motion to Interplead Receiver's Certificate (in Lieu of Cash) in which the

FDIC seeks to interplead herein a receiver's certificate in the sum of $498,712.78, which constitutes the uninsured portion of the MYICIS account.  This motion is also ripe for the Court's review.

* On August 26, 2010, Bentley filed its Supplemental Motion for Summary Judgment in which it asserted its interest in the receiver's certificate.  On September 1, 2009, Plaintiff filed a motion to strike the supplemental motion on the grounds that it was filed after the dispositive motion deadline.  Both of these motions are also ripe for the Court's review.

7. **The Rights of Plaintiff as a Third-Party Beneficiary**.

Plaintiff asserts he is entitled to be paid in cash pursuant to his writ of garnishment because he is a third-party beneficiary to the Security Agreement between Hicks d/b/a MYICIS and ANB.

(a) A third party can bring a claim for damages from a breach of contract "when there is substantial evidence of a clear intention to benefit that third party." *Perry v. Baptist Health*, 358 Ark. 238, 244-45 (Ark. 2004).  "It is not necessary that the person be named in the contract if he is a member of a class of persons sufficiently described or designated in the contract." *Id.* at 245.

9

(b)   The   full   text   of   the   relevant   paragraphs   in   the
Security Agreement is as follows:

1.    ICIS   authorizes   ANB   to   hold   and   retain   a   lien
against $1,000,000 of the amounts collected and held
in   the   account   as   a   reserve   fund   for   any   returned
items,   debits   or   other   charges   placed   against   the
account or ICIS.

2.    ICIS   authorizes   ANB   to   deduct   and   pay   from   the
reserve   fun   any   returned   items,   debits   or   other
charges placed against ICIS on the account.

* * *

4.    The $1,000,000 reserve fund shall be retained as
security   by   ANB   for   so   long   as   the   account   is   held   by
ICIS   and   for   a   reasonable   time   thereafter   to   be
determined   by   ANB   for   purposes   of   ensuring   the
obligations of ICIS are satisfied in full pursuant to
this Agreement and as holder of the account.

(c)   Mr. Hicks   has   submitted   an   Affidavit   in   this   matter
attesting  to  the  fact  that  "[a]lmost  all  of  the  funds  held  in
[the Account] belong to [Plaintiff]" and that Plaintiff's current
claim  to  the  monies  in  the  Account  "falls  directly  within  the
original  purpose  of  the  security  agreement."  (Affidavit,  document
#2-13).

The  Court  does  not  find  Mr.  Hicks'  Affidavit  to  be  credible
given  his  motive.   In  other  words,  if  the  Court  agrees  with
Plaintiff  and  orders  the  funds  in  the  Account  to  be  paid  to
Plaintiff,  then  a  substantial  amount  of  the  judgment  currently

10

pending against Mr. Hicks would be satisfied without Mr. Hicks having to pay any money himself.

(d)  At a state-court hearing on Plaintiff's writ of garnishment, ANB's counsel described the nature and the purpose of the Security Agreement as follows:

> There was a large amount of money in the account and it was very active.  The bank, however, became very concerned about some of the suspicious activities that were involved with regard to the account.  IRS' intervention, calls from customers of ICIS, which they could not respond to.  Because of their concerns, they obtained a contract from ICIS, whereby one million dollars of this account would be held as reserve.  And the purpose for that was to insure the bank that, if there were claims or liabilities imposed upon the bank because of ICIS' activities, the bank could pay claims that were against it, and reimburse itself for expenses.

(Statements by Paul Davidson, counsel for ANB, Hearing Transcript of August 7, 2007, document #23-12, p. 4).

Plaintiff relies on these comments to support his position that his writ of garnishment was a "claim" or "liability" of ICIS that was contemplated by the Security Agreement and, thus, should have been paid by ANB when the writ was served pursuant to the terms of the Security Agreement.

(e)  After a review of the record in this case, the Court finds that the purpose of the Security Agreement is not entirely clear.  Plaintiff has the burden, however, to establish that the

undisputed facts show the Security Agreement was entered into with "a clear intention" to benefit him. *Perry,* 358 Ark. at 244. The Court finds that Plaintiff has failed to meet his burden.

(f)  Nonetheless, the Court agrees with the FDIC that, even if Plaintiff could establish that he was a third-party beneficiary under the Security Agreement, the Security Agreement does not require ANB to pay any "returned item, debit or other charge" from the reserved amounts, but only authorizes ANB to do so.  (document #33).  Thus, neither ANB nor the FDIC could be held liable to Plaintiff for not paying a "charge" or "obligation" made against the Account.

(g)  Further, the Court agrees with the FDIC that, even if Plaintiff could make out a claim against the FDIC for ANB's and/or the FDIC's failure to pay him under the Security Agreement, Plaintiff "is still just a creditor against the receivership and is only entitled to a receiver's certificate and a pro rata share of the liquidated assets of ANB."  (document #33).

8.  **The Rights of Plaintiff as a Garnishee**.

Plaintiff asserts that, under Arkansas law governing writs of garnishments, a garnishee must retain possession of all property of the debtor in his hands, or otherwise he will be held

liable to the judgment creditor for the full value of the property, or for all monies due.  Plaintiff asserts that the FIRREA does not preempt Arkansas garnishment law and the fact that the FDIC took control over ANB does not alter its obligation to pay Plaintiff pursuant to the writ of garnishment served on ANB.

Even if the Court found that the writ of garnishment attached to the Account at the time it was served, and remains enforceable after the FDIC took over as Receiver of ANB, neither ANB nor the FDIC are obligated to pay Plaintiff because -- as set forth in detail below -- Bentley's claim to the funds in the Account has priority over Plaintiff's claim.  Thus, the Court declines to address this issue and the issue of the applicability of 12 U.S.C. § 1825 of the FIRREA[7].

That brings the Court to the crux of this case – the priority of the competing interests between Plaintiff and Bentley in and to the Account.

---

[7]Section 1825 of the FIRREA states that "[n]o property of the Corporation [meaning the FDIC] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation."

9.   **The Priority of Interests in the Account**.

The FDIC makes no claim to the Account.  The only two parties who have made a claim to the Account are Plaintiff and Bentley.

Bentley argues that it has a perfected security interest in the Account and that a perfected security interest has priority over a lien creditor such as Plaintiff.  Plaintiff argues that Bentley did not perfect its security interest in the Account and, therefore, Plaintiff has priority over Bentley.

The issue is governed by the relevant provisions of the Uniform Commercial Code, as adopted by Arkansas, that relate to secured transactions and, specifically, to the perfection and priority of such interests.  Those relevant provisions are set forth below:

(a)  A secured party may perfect a security interest in a deposit account under A.C.A. § 4-9-314, which provides that a security interest in a deposit account may be perfected by "control" of the collateral under A.C.A. § 4-9-104.

(b)  Under A.C.A. § 4-9-104(a)(2), a secured party has "control" of a deposit account if "the debtor, secured party, and bank have agreed in an authenticated record that the bank will comply with instructions originated by the secured party

14

directing disposition of the funds in the deposit account without further consent by the debtor."

(c)   Bentley claims that it perfected its security interest in the Account under A.C.A. § 4-9-104(a)(2) through "control" over the Account.   Specifically, Bentley points to the Control Agreement that it entered into with Plaintiff.   Under the Control Agreement, MYICIS granted Bentley a security interest in the Account, which is defined therein as the "Collateral," and MYICIS gave Bentley the right under the Control Agreement to, among other things, "[w]ithout notice or demand of any kind . . . transfer any of the Collateral into its name . . . . (document #22-7 at ¶ 3.2).   The Court finds that, under the Control Agreement, Bentley had the right to direct disposition of the funds in the Account without further consent by MYICIS.   In order for this to constitute "control," ANB had to agree to those provisions.

Subsequent to execution of the Control Agreement, ANB executed an "Acknowledgment" under which ANB agreed to the following:

> That upon receipt of the written Agreement executed by ICIS and Bentley evidencing the grant of said security interest from ICIS to Bentley in and to said account, ANB will comply with the instructions of the [sic] ICIS contained in said Agreement with regard to directing disposition of the funds in the account without further consent by ICIS; provided

> that the provisions of said Agreement including the direction of ICIS do not in any way alter, modify, diminish or in any way effect the rights of ANB in and to said account, security interest, Account Agreement, Reserve Fund and Security Agreement, amendments, modifications and instruments related thereto or the priority of ANB's first security interest in said account.

(document #22-9).

(d)   Based on the foregoing, Bentley asserts that:

*   Bentley had control over the Account as that term is defined under A.C.A. § 4-9-104(a)(2).

*   Because Bentley had control over the Account, Bentley perfected its security interest in the Account under A.C.A. § 4-9-314.

*   Because Bentley has a perfected security interest in the Account, Bentley has priority over Plaintiff as a lien creditor under A.C.A. § 4-9-317(a)(2) because Bentley's security interest was perfected before Plaintiff became a lien creditor.

*   Bentley is therefore entitled to the entire $100,000.

(e)   Plaintiff asserts that Bentley does not have a perfected security interest in the Account and that Plaintiff's interest as a lien creditor takes priority over Bentley's interest as an unperfected secured creditor.  Plaintiff asserts the following bases for his contention:

      *   First, Plaintiff asserts that the Control Agreement --
which is the document that grants to Bentley a security interest
in the Account -- is undated and, therefore, invalid.

      The Court is not persuaded by this argument.  Bentley has
provided the Court with no authority for his position that the
Control Agreement must be dated.  Counsel for Bentley has
provided an Affidavit to this Court stating that the Control
Agreement was executed by the parties in February 2007 (document
#22-7).  Although Plaintiff disputes this fact, Plaintiff has
offered no evidence to contradict this fact.  Further, there is
no dispute that the Control Agreement was, in fact, signed by
Bentley and Hicks d/b/a MYICIS, which is all that is required
under A.C.A. § 4-9-102(7) to "authenticate" the agreement.

      *   Second, Plaintiff asserts that ANB did not properly
authenticate the Control Agreement as required by A.C.A. § 4-9-
102(a)(7)(A).  Plaintiff argues that the "Acknowledgment" that
ANB signed was not the original acknowledgment contained in the
Control Agreement, but was a separate document that ANB created
and executed.

      The Court is also not persuaded by this argument.  Under
A.C.A. § 4-9-104(a)(2), a secured party gains control over a
deposit account if "the debtor, secured party, and bank have

agreed in an authenticated record. . . .”   Under A.C.A. §4-9-102(7) & (70), the “Acknowledgment” that ANB signed qualifies as an authenticated record because “authenticate” means “to sign.” Ark. Code Ann. § 4-9-102(7).

     *   Third, Plaintiff asserts that, under the terms of the Acknowledgment, Bentley did not take “control” over the Account because MYICIS did not have the ability to grant to Bentley control over the Account as MYICIS had previously granted to ANB a security interest in the Account.   Thus, Bentley asserts that any security interest that Bentley had in the Account was necessarily subservient to ANB’s interest, thereby defeating Bentley from taking unqualified or unfettered control over the Account.

     The Court is, again, unpersuaded by the Plaintiff’s argument.   Under the Uniform Commercial Code, there is nothing that prevents a debtor from creating more than one security interest in a deposit account, and there is nothing in the Code that requires a creditor who seeks to perfect a security interest by control under A.C.A. § 4-9-104(a)(2) to obtain “unqualified” control.

     Indeed, the Code expressly contemplates a situation where more than one party has a security interest in a deposit account,

18

providing that "security interests perfected by control under §
4-9-314 rank according to priority in time of obtaining control."
A.C.A. § 4-9-327(2).

Therefore, by granting to ANB a security interest in the
Account, MYICIS was not prevented from granting to Bentley a
second security interest in the Account and Bentley could take
"control" over the Account even if – as was the case here – ANB's
security interest in the account had priority over Bentley's
security interest.

*   Fourth, Plaintiff asserts that Bentley lacks standing
to assert its claim to the Account because Bentley is required to
exhaust its administrative remedies -- as did Plaintiff -- before
it can make a claim to the monies in the Account.  Plaintiff says
that, because Bentley has not exhausted its administrative
remedies, Bentley should be barred from these proceedings
altogether.

The FIRREA has an administrative claims process that
requires that claims must first be filed with the FDIC before any
legal action may be brought in court.  *See* generally 12 U.S.C. §
1821(d).  Bentley says that it should not be required to exhaust
its administrative remedies because it does not have any claim to
assert against the FDIC.  As Bentley points out, although ANB

19

initially claimed an interest in the Account, the FDIC, as Receiver for ANB, no longer claims any interest in the Account. Pulaski Bank is holding the insured portion of the account, $100,000, pending this Court's order and the FDIC has requested to interplead the remainder of the account in the form of a Receiver's Certificate. Thus, the only two parties that claim an interest in the Account are Plaintiff and Bentley.

Further, the Court notes that the FDIC -- who determines the claims process -- has not asserted that Bentley must exhaust its administrative remedies before it can assert its interest in the Account.  Further, while Plaintiff was forced to exhaust his administrative remedies, Plaintiff has brought specific and direct claims of breach of contract against the FDIC – Bentley has made no such claim and is only asserting an interest in an Account that the FDIC has disclaimed any interest in.  The Court finds that Plaintiff and Bentley are not similarly situated with respect to the claims process.

Therefore, the Court finds that Bentley is not required to file an administrative claim with the FDIC before it can assert its interest in the Account.

(f)  For the reasons set forth above, the Court finds that, as between Plaintiff and Bentley, Bentley has a security interest

20

in the Account that was perfected as of February 26, 2007, which was the date the Acknowledgment by ANB was signed. Because Plaintiff did not become a lien creditor until June 1, 2007, after Bentley perfected its security interest, Bentley's perfected security interest in the Account is superior to Plaintiff's interest in the Account. *See* Ark. Code Ann. § 4-9-317(a)(2).

Therefore, because Bentley has a priority in the Account, Bentley is entitled to be paid the $100,000 insured portion of the Account as well as to receive the $498,712.78 uninsured portion of the Account, which the FDIC requests to satisfy by the use of Receiver's Certificate.

10.   **The FDIC's Right to Interplead Receiver's Certificate**.

*   Bentley agrees that the uninsured portion of the Account is properly paid by the FDIC through a receiver's certificate.

*   Plaintiff objects to the FDIC's payment through a receiver's certificate.

*   Because the Court has held herein that Bentley has priority in and is entitled to the balance in the Account, Plaintiff's objection is moot. The Court notes, however, that it previously has held that:

21

> [t]he FDIC, as receiver, 'may, in [its] discretion ...
> pay creditor claims which are allowed by [it] ... in
> such manner and amounts as are authorized' by the
> Financial Institutional Reform Recovery and
> Enforcement Act (FIRREA). *See* 1821(d)(10)(A).  While
> it does not appear that the Eighth Circuit Court of
> Appeals has addressed the issue, the courts that have
> addressed it have held that the FDIC may use a
> Receivership Certificate to pay creditors and that is
> the only relief to which they are entitled. *See e.g.,*
> *Resolution Trust Corp. v. Titan Financial Corp.*, 36
> F.3d 891, 892-93 (9th Cir. 1994).

*First Federal Sav. Bank of Iowa v. Federal Dep. Ins. Corp.*, Case No. 08-cv-05160 (W.D. Ark. May 8, 2009).

   **IT IS THEREFORE ORDERED** that Intervener Bentley Investments of Nevada's **Motion for Summary Judgment (document #21)** is hereby **GRANTED**.  Bentley Investments of Nevada, LLC, is entitled to the entire $100,000 of the insured portion of the Account that is currently being held by Pulaski Bank.

   **IT IS FURTHER ORDERED** that Plaintiff Isaac Wiley's **Motion for Summary Judgment (document #23)** is hereby **DENIED**.

   **IT IS FURTHER ORDERED** that Garnishee Federal Deposit Insurance Corporation's **Motion to Interplead Receiver's Certificate (in Lieu of Cash) (document #27)** is hereby **DENIED** as the Court has determined that Bentley Investments of Nevada, LLC is the proper party to receive the receiver's certificate and, as such, an interpleader is not necessary.

**IT IS FURTHER ORDERED** that Intervener Bentley Investments of Nevada's **Supplemental Motion for Summary Judgment (document #30)** is hereby **GRANTED.** Bentley Investments of Nevada, LLC is the proper party to receive the receiver's certificate in the sum of $498,712.78, which constitutes the uninsured portion of the MYICIS account.

**IT IS FURTHER ORDERED** that Plaintiff Isaac Wiley's **Motion to Strike Intervener's Supplemental Motion (document #38)** is hereby **DENIED.**

As this Order resolves all claims between and the parties in this matter, this case is hereby **DISMISSED.**

**IT IS SO ORDERED.**

**/s/ Jimm Larry Hendren**
**JIMM LARRY HENDREN**
**UNITED STATES DISTRICT JUDGE**

23